## In re GARRETT ROAD SUPERMARKET, INC.

### Civ. No. 88–7439.
### Bankruptcy No. 88–11524.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 1989.

See also, D.C., 95 B.R. 904.

---

Steven R. Fischer, Gary A. Rosen, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, Pa., for Garrett Road Supermarket, Inc.

Pace Reich, Philadelphia, Pa., for Wetterau.

### MEMORANDUM

LOUIS H. POLLAK, District Judge.

Creditor/appellant Wetterau, Inc. ("Wetterau") appeals from an order of Bankrupt-

---

cy Judge Scholl granting a motion of debtor/appellee Garrett Road Supermarket, Inc. ("Garrett Road") to declare certain equipment property of the estate.

The equipment that is at issue was transferred from Wetterau to Garrett Road in accord with two of several agreements that Wetterau and Wetterau Food Services, Inc. entered into with Garrett Road on October 17, 1986 as part of Garrett Road's purchase of a supermarket. The equipment transaction is governed by an "Equipment Lease" signed by the parties on October 17, 1986 (the "Lease"), and a letter of the same date between Garrett Road and Wetterau Food Services, Inc.'s Executive Vice President and General Manager, Frank Manetta, regarding an "Equipment Lease Buy Out" (the "Side Letter"). Wetterau Brief, Exhs. C & D. Wetterau, Inc., the parent of both Wetterau and Wetterau Food Services, Inc. ratified the Lease and the Side Letter at a board meeting on November 3, 1986. Garrett Road Brief, Exh. B.

After filing for Chapter 11 in May 1988, Garrett Road moved for the bankruptcy court to declare the equipment that is the subject of the Lease and Side Letter property of the estate, arguing that the transaction was an installment sale and security agreement. Complaint, Wetterau Brief, Exh. F. Judge Scholl held an evidentiary hearing on the motion on August 25, 1988; a full transcript of that proceeding is attached to the record as Exhibit B of the Wetterau Brief. In an order of the same day (the "Order"), Judge Scholl stated:

[T]he 'Equipment Lease' dated October 17, 1986 between Debtor and Wetterau Finance Co. is in fact and law an installment sale and security agreement, and not a true 'lease,' and therefore the Equipment acquired by Debtor pursuant to the 'Equipment Lease' dated October 17, 1986 between Debtor and Wetterau

Finance Co. is property of the estate not subject to any leasehold interest of Wetterau Finance Co.

Order, Wetterau Brief, Exh. E. Wetterau appeals this Order.[1]

Wetterau contends that the bankruptcy court failed to set forth sufficient findings of fact on all material and subsidiary issues and therefore that the Order must be reversed and remanded for appropriate findings. In the alternative, Wetterau argues that if this court does not remand this matter, the court must conduct a de novo review and conclude that the bankruptcy court erred in finding the transaction was an installment sale and not a true lease.

Wetterau first argues that the bankruptcy court failed to meet the requirement of Bankruptcy Rule 7052, which applies to contested matters pursuant to Bankruptcy Rule 9014, and requires findings of fact in certain matters. Rule 7052 provides simply that Federal Rule of Civil Procedure Rule 52 applies in adversary proceedings. Rule 52, governing findings by the court, states in relevant part that:

(a) In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.... It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

Fed.R.Civ.Proc. 52(a).

The motion in the present case was for a declaration that certain equipment was

---

**1.** During the pendency of this appeal, Debtor moved for and was granted authorization to conduct a public auction of operating assets, including the equipment in question. Wetterau did not appeal the order authorizing the sale, but instead purchased the equipment at the public auction on October 3, 1988.

Garrett Road now argues that the present appeal is moot, as the assets in question have

been sold. Unlike *In re Cantwell,* 639 F.2d 1050, 1054 (3d Cir.1981) (holding that vacating an order discharging stay would not reverse the effects of the discharge), in the present case the result of this appeal can alter the disposition of proceeds from the sale of the equipment. As ownership in this case presents a live controversy, I will address the merits of the appeal.

property of the debtor's estate. The parties agreed that the debtor's ownership of the equipment turned on whether it was transferred under a true lease or an installment sales contract. In turn, the parties agreed that the Lease, as modified by the Side Letter, governs this determination. Finally, they agreed that 13 P.C.S.A. § 1201, defining a "security interest," provides the controlling definition by which to interpret the Lease and Side Letter: "[A]n agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." 13 P.C.S.A. § 1201 ("security interest," (2)).

The crux of the parties' disagreement is over whether consideration for the option, as specified in the terms of the Side Letter, was nominal. The Side Letter provides in the first paragraph that:

> [A]ny and all equipment covered by such lease may be purchased by you at the end of the said leasehold term for the sum of Ten Dollars ($10.00) assuming that all terms and conditions of said Lease have been complied with and your are not in default under the terms of said Lease or any other note or agreement with Wetterau Finance Co., Wetterau Incorporated, or Wetterau Foods Services, Inc.

The second paragraph of the Side Letter states, in its entirety:

> The within buy out is offered to you as consideration for your continued participation in all Wetterau programs, and your concentration of purchases from the Wetterau warehouse.

Wetterau Brief, Exh. D. Garrett Road contends that the first paragraph provides for purchase at the clearly nominal consideration of $10.00 and thus that the Lease was intended as security. Wetterau contends that the second paragraph adds requirements of participation in all Wetterau programs and concentrated purchases as conditions of the option, and thus that consideration is not nominal.

Judge Scholl, in ruling on the motion to declare the equipment to be property of the estate, concluded, albeit without elaboration in his Order, that the Lease "is in fact and in law an installment sale and security agreement, and not a true 'lease.'" Wetterau Brief, Exh. E. In addition, at the hearing Judge Scholl commented on the second paragraph of the Side Letter that was the focal point of Wetterau's argument: "[Y]ou're going to say, well, the letter tried to tie something in there at the end, but boy, I don't know. Your man even admitted that the programs weren't tied in." N.T. at 60. Wetterau argues that the record fails to state findings on all "relevant subsidiary and essential facts." Wetterau does not propose alternative findings of fact, but rather poses a list of issues it claims require findings, including the intent of the parties to lease or sell, and the fair market value of the equipment. Wetterau Brief, at 10–11.

■ The dispute in the present case turns on the construction of and intent behind a few sentences. Judge Scholl's conclusion that the Lease was an installment sale provides the only ultimate fact upon which he based his declaration that the equipment was part of the debtor's estate. His additional comments on the disputed paragraph of the Side Letter also reveal his conclusion that the second paragraph did not include participation in Wetterau programs as part of the consideration required for the buy-out option. Given the narrow dispute posed by the instant case, I find Judge Scholl's admittedly brief conclusions and remarks provide sufficient findings to support his decision. *See United States v. F.D. Rich Co., Inc.*, 439 F.2d 895, 899 (8th Cir.1971) (holding under Fed.R.Civ. Proc. 52(a) the "trial court need not make specific findings on all facts and evidentiary matters brought before it, but need find only the ultimate facts necessary to reach a decision in the case"); *see also* 5A *Moore's Federal Practice* § 52.06[1]. I do not conclude that answers to all of Wetterau's proposed questions, to the extent that some may remain unstated on the record, are essential to support Judge Scholl's ruling

or to permit effective review of his decision.[2]

I therefore see no need to remand this matter for additional findings of fact, and will proceed to a plenary review of the legal conclusions of the bankruptcy court and a review of the factual conclusions for clear error as prescribed by Bankruptcy Rule 8013. *See In re Morrissey*, 717 F.2d 100, 104–05 (3d Cir.1983). As the previous discussion of the dispute indicates, the sole legal and factual dispute presented by the motion to declare ownership of the equipment was the true nature of the transaction created by the Lease and Side Letter. I find the terms of the first paragraph of the Side Letter are unambiguous, presenting only questions of law for the court; the terms of the second paragraph, however, present ambiguities requiring review of the factual conclusions of the trial court. *See In re Butcher Boy Meat Market, Inc.*, No. 78–466, slip op. (Bankr.E.D.Pa. May 5, 1980).

The first paragraph of the Side Letter sets a price of $10.00—clearly nominal consideration on equipment valued at $290,-000—as the purchase price for the equipment at the end of the leasehold term. Wetterau Brief, Exh. D & C (price list). The conditions contained in the sentence providing this price are compliance with the terms of the lease and compliance with any other agreement made "with Wetterau Finance Co., Wetterau Incorporated, or Wetterau Food Services, Inc." *Id.* The first condition, compliance with the terms of the lease, is assumed under 13 P.C.S.A. § 1201 and does not affect whether a lease is intended as security. The second condition, that there be no default on any other agreements with Wetterau and its related corporate entities, is on its face a reference to separate legal obligations, and thus presents no additional consideration for the buy-out agreement.[3]

The second paragraph of the Side Letter sets out what Wetterau argues is addition-

2. Garrett Road argues that the plain language of Federal Rule of Civil Procedure 52(a) requires findings only in actions pursuant to Federal Rule of Civil Procedure 41(b) governing involuntary dismissals of claims, and that findings in all other motions are discretionary. *See In re The Campfire Shop, Inc.*, 71 B.R. 521, 524 (Bankr.E.D.Pa.1987). Such a reading of Rule 52(a) cannot, of course, insulate the decisions of bankruptcy courts from meaningful appellate review. *See In re Morrissey*, 717 F.2d 100, 101, 104 n. 6 (3d Cir.1983) (ruling on jurisdictional grounds, but noting in dictum that consideration of the merits would have been "severely hampered by the brevity of the bankruptcy court's opinion" and directing remand to the bankruptcy court for "findings of fact and conclusions of law adequate for the purposes of subsequent appellate review").

As I conclude that the findings of fact are sufficient for review in the present case, I need not resolve here whether findings are always required on motions to determine ownership of property in a Chapter 11 case pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a).

3. Wetterau does not appear to claim that the reference in the first paragraph adds conditions to the $10.00 buy-out price, but only argues that compliance with other agreements is added by the language of the second paragraph. In regard to the second paragraph, Wetterau claims that a "Purchase Requirements Agreement" signed by the parties on October 17, 1986 sets

forth arguably significant additional obligations on Garrett Road. Wetterau Brief, Exh. A. Even applying this argument to the language of the first paragraph, I conclude that requiring compliance with other agreements is not additional consideration for the buy-out option. I reach this conclusion for the following reasons:

Wetterau agrees with the "hornbook rule of contract law that the performance of acts one is legally obligated to perform is not consideration for a promise." Wetterau Reply, at 13. The record indicates that the Purchase Agreement was a separate obligation from the Lease and Side Letter, and that, as an integral part of the grocery store sale, it presented conditions necessarily precedent to any transfer of equipment. Cross of Weiler, N.T. at 47. The Side Letter's possible reference to the Purchase Agreement was therefore at best a reiteration of pre-existing legal obligations that could not add to the consideration for the buy out.

To the contrary, Wetterau claims that the Purchase Agreement was not an obligation "precedent" to the Lease and Side Letter, but that these documents were "integral parts of a single transaction." *Id.* at 14. Assuming *arguendo* that this is true, then the requirements of the Purchase Agreement were already in the Lease itself, which requires observance of "any other covenant, condition, or agreement" to avoid default of the Lease. Lease ¶ 14(b), Wetterau Brief, Exh. C.

As previously discussed, compliance with terms of the disputed lease is not part of the consideration relevant under 13 P.C.S.A. § 1201.

al, substantial consideration for obtaining the buy-out option. Wetterau argues that the paragraph imposes an additional requirement of "participation in programs" as a condition for the buy out. Judge Scholl's statements from the bench make it apparent that he found that the paragraph's general reference to participation in Wetterau "programs" was not a condition that was part of the Lease and buy out; in support of this finding Judge Scholl noted that the testimony of "your [Wetterau's] man" supports the inference that participation by Garrett Road in all Wetterau "programs" was not understood to be an additional condition tied to the buy out. N.T. at 60. The testimony of "[Wetterau's] man"—Controller Robert Sieger—clearly supports the construction Judge Scholl put upon it.[4]

Thus, on review of the Lease, Side Letter, and record of the proceedings, I find no error in Judge Scholl's factual determination that the additional paragraph did not add any substantial consideration to the $10.00 price of the buy-out option. Applying the standard of 13 P.C.S.A. § 1201 to the fact, I also conclude that the Lease and Side Letter created an installment sale with security interest. I will therefore affirm the Order of August 26, 1988. An appropriate order follows.

---

**4.** THE COURT: Well, I mean, did they [Garrett Road] ever say, look, we understand we have to engage in all these programs, otherwise this $10–buyout is off? I mean was that ever their understanding as far as you know?

MR. SIEGER: No, sir.

THE COURT: All right. Thank you.
Sieger Direct, N.T. at 53. *See also* Sieger Direct, N.T. at 51–52 ("programs" is "sort of like a generic term, that it's very—all encompassing of everything that we offer to the stores").